UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KEELY R. SMITH, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 7:21-cv-278 | |
| § | | |
| UNIVERSITY OF TEXAS - § | | |
| RIO GRANDE VALLEY, § | JURY DEMANDED | |
|     Defendant. § | | |

**Plaintiff's Original Complaint**

TO THE HONORABLE COURT:

**KEELY R. SMITH**, Plaintiff, complains of and against the **UNIVERSITY OF TEXAS - RIO GRANDE VALLEY**, Defendant, and for cause of action shows:

**I. Introduction**

1. Defendant **UNIVERSITY OF TEXAS - RIO GRANDE VALLEY** ("**UTRGV**") discriminated against Plaintiff **KEELY R. SMITH** ("**SMITH**") on the basis of her disability in regard to job application procedures, the hiring, advancement, or discharge of Plaintiff, job training, and other terms, conditions, and privileges of employment. Defendant harassed and excluded Plaintiff **SMITH** from employment at **UTRGV**. Additionally, Defendant **UTRGV** retaliated against Plaintiff **SMITH** in response to her complaints about harassment and in response to her opposition to being excluded from employment at **UTRGV**.

**II. Parties**

2. Plaintiff **KEELY R. SMITH** is a resident of Hidalgo County, Texas.

3. Defendant **UTRGV** is a state agency and institution of higher education located in

Hidalgo County, Texas.

### III. Jurisdiction and Venue

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

5. The federal claims in this action are authorized and instituted pursuant to 42 U.S.C. § 12117 (a), and 29 U.S.C. § 794a, which invoke the powers, remedies, and procedures set forth in 42 U.S.C. § 2000e-5.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

### III. Service Instructions

8. Plaintiff **SMITH** is a resident of Hidalgo County, Texas.

9. Defendant **UTRGV** is located in Hidalgo County, Texas and may be served through its Office of Legal Affairs at 1201 West University Dr., Edinburg, TX 78539.

### IV. Parties

10. Plaintiff **SMITH** is a person with a disability. **SMITH** has attention deficit hyperactivity disorder, commonly referred to as "ADHD."

11. Plaintiff **SMITH** is a person with a physical or mental impairment that substantially limits one or more major life activities, has a record of having said disability, and is regarded as having a disability within the meaning of the ADA, as amended, 42 U.S.C. § 12102.

12. As a result of her condition, Plaintiff **SMITH** is substantially limited in major life activities including, but not limited to, reading, concentrating, thinking, and communicating.

13. At all relevant times, **SMITH** was a qualified individual because she was able to perform the essential functions of the job she held at **UTRGV**, with or without reasonable accommodations.

14. Defendant **UTRGV** is a covered entity as defined by the ADA, 42 U.S.C. § 12111(2).

15. Whenever in this Original Complaint it is alleged that Defendant **UTRGV** committed any act or omission, it is meant that **UTRGV**'s officers, directors, principals, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with full authorization, ratification or approval of **UTRGV** or was done in the routine course and scope of employment of **UTRGV**'s officers, directors, principals, vice-principals, agents, servants, or employees.

## V. Exhaustion of Administrative Remedies

16. Prior to filing this suit, **SMITH** filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Because the charge involved claims against **UTRGV** - a state agency - the charge was forwarded to the U.S. Department of Justice.

17. On April 22, 2021, Plaintiff **SMITH** received a right to sue notice from the Civil Rights Division of the U.S. Department of Justice. This lawsuit is timely filed within 90 days of the notice.

18. Plaintiff **SMITH** has satisfied all administrative prerequisites to this suit and has exhausted all conditions precedent.

## VI. Statement of Facts

19. Since 2008, Plaintiff **SMITH** worked for **UTRGV** as a research assistant, intern,

counseling specialist, and an academic advisor.

20. On or about November 1, 2017, Plaintiff **SMITH** was hired as an academic advisor in the **UTRGV** School of Medicine.

21. Plaintiff **SMITH**'s direct supervisor in the role of academic advisor was Dr. Mercy Azeke, who held the title of Director of Academic Advising and Student Support Services for **UTRGV**'s School of Medicine.

22. Shortly after commencing the academic advisor position under Dr. Azeke, Plaintiff **SMITH** and Dr. Azeke began to "clash."

23. Plaintiff **SMITH** asserts that Dr. Azeke began to harass Plaintiff by suggesting that **SMITH** "lacked skills" and asking why Plaintiff was so "happy" and "full of energy" all the time.

24. Azeke did not offer any training to Plaintiff **SMITH**.

25. Frustrated with the harassing treatment from Dr. Azeke, on or around December 15, 2017, Plaintiff **SMITH** confronted Dr. Azeke and told her that she had never been criticized so much in all of her years working in higher education and **SMITH** confessed to Dr. Azeke that **SMITH** had ADHD and took medication to ameliorate the condition. Plaintiff told Dr. Azeke that she nevertheless could do good work and make Azeke proud.

26. At no point did Dr. Azeke relay this admission concerning Plaintiff **SMITH**'s disability to UTRGV's Human Resources Department (herein "HR") and Dr. Azeke did not advise Plaintiff **SMITH** to report her disability to HR.

27. Instead, Dr. Azeke continued to intimidate and harass Plaintiff **SMITH**.

28. Dr. Azeke harassed Plaintiff **SMITH** by making statements including, but not limited

to: "you are too energized for me" and "you need to take your medication."

29. Plaintiff **SMITH** communicated with Dr. Adela Valdez, Associate Dean of Student Affairs at **UTRGV**'s School of Medicine about the issues with Dr. Azeke due to the continued harassment.

30. After this, Dr. Valdez met with both Plaintiff **SMITH** and Dr. Azeke to help clear the air between them. But Dr. Valdez did not advise Plaintiff **SMITH** to report her disability or any of her concerns to HR.

31. During this meeting, Dr. Azeke alleged that Plaintiff **SMITH** was not meeting with enough School of Medicine students for academic advising.

32. Dr. Azeke's allegation that Plaintiff **SMITH** was not meeting with enough School of Medicine students was pretextual.

33. Plaintiff **SMITH** was not allowed to work with "high-risk" students - students who needed additional academic help and who were required to meet with academic advising. Those that **SMITH** was allowed to meet with who were deemed "non high risk" - were not required to go to academic advising. High-risk students met with Dr. Azeke or other academic advisors.

34. Dr. Azeke told Plaintiff **SMITH** to be mindful of the academic schedules of all School of Medicine students and to "not bother" them during stressful periods. All School of Medicine students were commonly known to be extremely busy and were sometimes simply unable to make time to voluntarily meet with academic advisors due to their heavy course loads, critical exams, and other academic requirements such as quizzes, presentations, and other course work.

35. Plaintiff **SMITH** was not granted access to Blackboard - a software program that

allowed student schedules, course work, and academic progress to be monitored - until after her 90 day performance evaluation in which she raised the issue.

36.  Plaintiff SMITH's 90 day performance evaluation was for the period of November 1, 2017 through January 31, 2018, but it was not presented to Plaintiff until February 27, 2018.

37.  Plaintiff **SMITH** disagreed with the evaluation in which Dr. Azeke described the pretextual concerns mentioned above about not meeting with enough students and Plaintiff refused to sign the evaluation.

38.  Dr. Azeke signed the performance evaluation on March 1, 2018.

39.  Despite Plaintiff **SMITH**'s disagreement with the performance evaluation, **SMITH** was able to meet with approximately 90% of the students whom were assigned to her and who were not already meeting with another academic advisor.

40.  Plaintiff **SMITH** continued her efforts to meet or exceed expectations.

41.  Dr. Azeke failed to make Plaintiff **SMITH** aware of relevant School of Medicine events. Plaintiff **SMITH** had to repeatedly ask Dr. Azeke whether she could or should attend events related to her work - such as a "Welcome Back Weekend" for School of Medicine students in early April 2018.

42.  Despite her efforts to perform well, on April 9, 2018, Plaintiff **SMITH** received a letter from Dr. Azeke in which Dr. Azeke communicated to **SMITH** that her employment was terminated due to an alleged failure to "maintain satisfactory work performance standards" during her probationary period.

43.  Plaintiff **SMITH** immediately sought to appeal the allegations in the termination letter on the same day, April 9, 2018. Plaintiff **SMITH** was told that she needed to resign or be

discharged and, from the meeting involving Azeke and HR, **SMITH** understood that she should choose a discharge rather than resignation in order to qualify for unemployment benefits.

44. Plaintiff **SMITH** then met with Vera Ruiz in HR on or around April 23, 2018 because **SMITH** was concerned about her termination overall, and the wording, including the word "discharge," in her termination letter and material and her ability to obtain other positions with **UTRGV**. Ruiz did not offer any information to Plaintiff **SMITH** about the appropriate procedures for her grievance.

45. Plaintiff **SMITH** then applied for forty-seven other jobs at **UTRGV** for which she was qualified.

46. Plaintiff **SMITH** was immediately rejected for all jobs she applied for despite Defendant **UTRGV**'s practice to refer terminated **UTRGV** employees for other positions internally.

47. On July 11, 2018, Plaintiff **SMITH** sent an email to Michael James, **UTRGV**'s Chief Human Resources Officer, explaining her concerns about being denied employment with Defendant and requested a meeting.

48. On July 11, 2018, James responded to Plaintiff **SMITH** and told her to seek employment "outside of UTRGV."

49. Plaintiff **SMITH** continued to apply for employment with **UTRGV** through December 2019 and was immediately rejected for each job.

### VII. Cause of Action - 504 of the Rehabilitation Act of 1973

50. Plaintiff **SMITH** incorporates each of the foregoing paragraphs as if fully set forth herein.

51. It is unlawful to exclude from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance, including the processing of applications for employment and hiring. 29 U.S.C. § 794(a); 10 C.F.R. § 4.122(a), (c)(1) and (2).

52. It is unlawful for to limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of a disability, such as "blacklisting." 10 C.F.R. § 4.122(b).

53. Defendant **UTRGV** violated 504 of the Rehabilitation Act by (1) limiting, segregating, or classifying (or "blacklisting") Plaintiff **SMITH** in an adverse way when she sought employment with **UTRGV**, and (2) processing Plaintiff **SMITH**'s applications for employment with **UTRGV** in a discriminatory fashion; both in violation of Section 794(a) of the Rehabilitation Act.

54. Defendant **UTRGV**'s actions as described above were and are the direct and proximate causes of Plaintiff **SMITH**'s damages and equitable relief sought in this case.

## VIII. Cause of Action -ADA

55. Plaintiff **SMITH** incorporates each of the foregoing paragraphs as if fully set forth herein.

56. It is an unlawful employment practice to discriminate against an otherwise qualified individual with a disability by limiting, segregating, or classifying a job applicant or employee in a way that adversely affects their opportunities or status, such as "blacklisting." 42 U.S.C. § 12112(b)(1); 29 C.F.R. § 1630.5.

57. It is unlawful to discriminate against any individual because such individual has

opposed any unlawful act or practice under the ADA. 42 U.S.C. § 12203(a); 29 C.F.R. § 1630.12(a).

58. It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual's exercise of the rights protected by the ADA, including employment. 42 U.S.C. § 12203(b); 29 C.F.R. § 1630.12(b).

59. Defendant **UTRGV** violated the ADA by: (1) limiting, segregating, or classifying (or "blacklisting") Plaintiff **SMITH** in an adverse way when she sought employment with **UTRGV** in violation of Section 12112(b) of the ADA; (2) by retaliating against Plaintiff **SMITH** when she applied for employment with **UTRGV** in violation of Section 12203(a) of the ADA; and (3) by coercing, harassing, and interfering with Plaintiff **SMITH**'s exercise of her right to employment when she applied for jobs with **UTRGV** in violation of Section 12203(b) of the ADA.

60. Defendant **UTRGV**'s actions as described above were and are the direct and proximate causes of Plaintiff **SMITH**'s damages and equitable relief sought in this case.

## IX. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff **KEELY R. SMITH** respectfully prays that upon trial of this Court, she recover from Defendant **UTRGV** the following:

    a.    Enter a declaratory judgment that Defendant **UTRGV** violated Plaintiff **SMITH**'s rights under the ADA;

    b.    Enter declaratory judgment that Defendant **UTRGV** violated Plaintiff **SMITH**'s rights under Section 504 of the Rehabilitation Act;

    c.    Place Plaintiff **SMITH** in a comparable position to the one she would have had absent the improper acts of the Defendant **UTRGV** or front-pay in lieu of reinstatement;

d. Award Plaintiff back-pay with prejudgment interest;

e. Award Plaintiff compensatory damages for her past and future pecuniary and nonpecuniary losses;

f. Award Plaintiff liquidated damages;

g. Award Plaintiff reasonable attorney's fees, expenses including litigation expenses, and costs from Defendant;

h. All damages allowed under Plaintiff's statutory cause(s) of action, including statutory interest, liquidated damages, prejudgment interest and post-judgment interest as provided by law;

i. Enter a judgment in favor of Plaintiff;

j. Grant Plaintiff such further equitable and other relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ William D. Mount, Jr.*
KATIE PEARSON KLEIN
State Bar No. 11561900
Southern District No. 7577
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Southern District No. 14992
LISA Y. GUERRA
State Bar No. 24112407
Southern District No. 2506606
DALE & KLEIN, L.L.P.
1100 E. Jasmine Ave. Ste 202
McAllen, Texas 78501
(956) 687-8700/(956) 687-2416 (fax)
office@daleklein.com
***Attorneys for Plaintiff Keely R. Smith***

Dated: July 19, 2021.