UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KEELY R. SMITH, § | | |
|  *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 7:21-cv-278 |
| § | | |
| THE UNIVERSITY OF TEXAS - § | | |
| RIO GRANDE VALLEY, and MERCY § | | |
| AZEKE, VERA RUIZ, MICHAEL § | | JURY DEMANDED |
| JAMES, and GUY BAILEY, in their § | | |
| official capacities, § | | |
|  *Defendants*. § | | |

**<u>Plaintiff's Response in Opposition to Defendant UTRGV's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 121(B)(1) and 12(B)(6) (Dkt. 11)</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, **KEELY R. SMITH,** hereby files this her Response in Opposition to Defendant UTRGV's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 121(B)(1) and 12(B)(6) (Dkt. 11). In support thereof, the Plaintiff respectfully shows the following:

### I. <u>PROCEDURAL BACKGROUND</u>

Defendant University of Texas Rio Grande Valley ("**UTRGV**") filed its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(B)(1) and 12(B)(6) ("Defendant **UTRGV**'s Motion to Dismiss") on or about October 11, 2021. (Dkt. No. 11). Plaintiff's deadline to respond to Defendant **UTRGV**'s Motion to Dismiss was November 1, 2021 - 21 days after the filing of the aforementioned motion. On October 28, 2021, Plaintiff filed an Unopposed Motion to Extend Deadline to Respond to Motion to Dismiss and to Continue Initial Pretrial and Scheduling Conference. (Dkt. 13). In response, the Initial

Pretrial and Scheduling Conference was reset and will be held on Wednesday, December 8, 2021, at 2:30 p.m., before the Honorable Ricardo H. Hinojosa. (Dkt. No. 14). On November 15, 2021, the parties then filed a Joint Motion for Extension of Deadline to Respond to Defendant **UTRGV**'s Motion to Dismiss ("Joint Motion for Extension"), in which Plaintiff requested an extension through November 23, 2021, to file this Response. (Dkt. 16). The Joint Motion for Extension also included a request for an extension of the deadline for Defendant **UTRGV** to Reply to Plaintiff's Response to December 3, 2021. (Dkt. 16). Plaintiff here Responds to Defendant UTRGV's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Plaintiff **KEELY SMITH** incorporates by reference the Statement of Facts asserted in her First Amended Complaint, filed September 13, 2021. (Dkt. 5). In summary, Plaintiff **SMITH** was employed by **UTRGV** for ten years - from 2008 through 2018. (Dkt. 5, ¶¶ 31, 56). On November 1, 2017, Plaintiff **SMITH** was hired as an academic advisor at **UTRGV**'s School of Medicine where she was directly supervised by Dr. **MERCY AZEKE**, Director of Academic Advising and Student Support Services for **UTRGV**'s School of Medicine. (Dkt. 5, ¶¶ 32-33). Dr. **AZEKE** discriminated against, harassed, and retaliated Plaintiff **SMITH** because of her disability until **SMITH** was terminated. (Dkt. 5, ¶¶ 34-35, 39-40, 43-49, 53-56). After her termination, **SMITH** specifically communicated concerns with **VERA RUIZ** of **UTRGV**'s Human Resources Department about her eligibility for rehire. (Dkt. 5, ¶ 57). **SMITH** applied for numerous positions with **UTRGV** and was immediately rejected each time. (Dkt. 5, ¶¶ 58-59, 62). **SMITH** was told by **JAMES** to seek employment "outside of **UTRGV.**" (Dkt. 5, ¶¶ 60-61; **Ex. A** to Defendant UTRGV's Motion to Dismiss, (Dkt. 11)). **JAMES** told **SMITH** in an email, that she could only be considered for employment once she "sustained successful employment

elsewhere." Id. **SMITH** nevertheless continued to apply for employment positions with **UTRGV** and was consistently rejected. (Dkt. 5, ¶¶ 58-62).

On February 14, 2020, **SMITH** filed a Charge of Discrimination with the EEOC. (Dkt. 5, ¶ 28; **Ex. A** to Defendant **UTRGV**'s Motion to Dismiss, Dkt. 11). Plaintiff **SMITH** filed her Original Complaint on July 19, 2021. (Dkt. 1). Plaintiff **SMITH** then filed her First Amended Complaint on September 13, 2021, in which **SMITH** asserts violations of Section 504 of the Rehabilitation Act by Defendant **UTRGV** and violations of Title I of the Americans with Disabilities Act ("ADA") by Defendants **MERCY AZEKE**, **VERA RUIZ**, **MICHAEL JAMES**, and **GUY BAILEY**. (Dkt. 11, ¶¶ 63-76).

### III. DEFENDANT UTRGV'S MOTION TO DISMISS

Defendant **UTRGV** seeks to dismiss: 1) Plaintiff's ADA claim against **UTRGV** due to sovereign immunity; 2) Plaintiff's Rehabilitation Act claim against **UTRGV** due to the statute of limitations; and 3) Plaintiff's Rehabilitation Act against **UTRGV** claim for failure to make a *prima facie* case of discrimination. Defendant **UTRGV**'s Motion to Dismiss should be denied in its entirety.

**A.     Defendant UTRGV's Sovereign Immunity claim is moot.**

Plaintiff **SMITH** does not assert a claim directly against **UTRGV** for a violation of the ADA, and thus, Defendant's first point concerning **UTRGV**'s purported sovereign immunity with respect to the ADA is moot.

**B.     Plaintiff SMITH's claims under Section 504 of the Rehabilitation Act fall within the applicable statute of limitations and are not time-barred because.**

Plaintiff **SMITH**'s claims are not time-barred. The four-year federal statute of limitations pursuant to 29 U.S.C. § 1658(a) applies to Plaintiff **SMITH**'s claims.

In 1992, Congress amended the Rehabilitation Act in order to incorporate the ADA's standards governing complaints of disability discrimination. *See Fletcher v. La. DOT & Dev.*, 848 F. App'x 163, 164 (5th Cir. 2021). In the conference committee report on the enactments, Senator Harkin stated: "The conference report includes the Senate provisions incorporating the standards applied under the employment provisions of the Americans with Disabilities Act into the employment sections of title V of the Rehabilitation Act. *Soledad v. U.S. Dep't of the Treasury*, 304 F.3d 500, 503-504 (5th Cir. 2002)**;**138 Cong. Rec. S. 16608 (daily ed. Oct. 5, 1992). The 1992 Amendment enacted the following provision Section § 794 of the Rehabilitation Act:

> **(d) Standards used in determining violation of section.** The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.
>
> - 29 U.S.C. § 794 (d) (West 2021).

Additionally, in 2008, Congress passed the Americans with Disability Amendments Act (ADAAA). The ADAAA significantly expanded the meaning of terms included in the definition of disability. *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011).[1] The ADAAA amendments expanded the class of individuals to be protected under the

---

[1] The *Norton* Court explained as applied to that case that: "the most significant changes to the ADA are as follows: (1) The ADA now states that "[t]he definition of 'disability' [under the Act] shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the Act]." 42 U.S.C. § 12102(4)(A).
   (2) The definition of "major life activities" under the Act's actual disability prong was expanded to include the operation of "major bodily functions." 42 U.S.C. § 12102(2)(B). The Act now includes a sample list of major bodily functions that constitute a major life activity; this list includes "normal cell growth." Id.
   (3) The Act emphasizes that the term "substantially limit" under the actual disability prong shall be interpreted as broadly as possible. 42 U.S.C. §12102(4)(A) & (B).
   (4) The Act now clarifies that as long as an impairment substantially limits one major life activity, such as

definition of disability. *See Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 867 n.32 (S.D. Tex. 2010). Indeed, "Congress explicitly stated that it intended to liberalize the ADA 'in favor of broad coverage' and "mandated that the ADA, as amended, be interpreted as broadly as its text permits." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014).

The ADAAA amendments are explicitly incorporated into the Rehabilitation Act by 29 U.S.C. § 794(d) as cited above. 29 U.S.C. § 794(d) (West 2021). The 2008 ADAAA amendments, by changing the standards also applicable to claims under the Rehabilitation Act, give rise to all or some of Plaintiff **SMITH**'s claims. For example, Plaintiff **SMITH** claims that she was "regarded as" having a disability. (Dkt. 5, ¶ 19). "By virtue of those liability-enlarging amendments, [**SMITH**] need not plead and prove that the defendants regarded her as having a physical or mental impairment that substantially limited a major life activity. She need plead and prove only that the defendants regarded her as having a physical or mental impairment, *no matter the defendants' view of the magnitude of the effect of the perceived impairment on her life activities.*" *Mercado v. Puerto Rico*, 814 F.3d 581, 588 (1st Cir. 2016) (citing 42 U.S.C. § 12102(3)(A) and holding that the four-year statute of limitations applied to the plaintiff's regarded-as claim). Plaintiff **SMITH's** claims too, are subject to a four-year statute of limitations.

When a federal statute itself lacks a statute of limitations, 42 U.S.C. § 1988(a) directs the court to follow federal law *if federal law provides a limitations period*. *Hickey v. Irving Indep.*

---

normal cell growth, it need not limit other major life activities, such as working, in order to be considered a disability. 42 U.S.C. §12102(4)(C)."
    (5) Finally, the Act explains that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity [such as normal cell growth] when active." 42 U.S.C. §12102(4)(D);
    - *Norton,* at 1185.

*Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992) (emphasis added). Defendant **UTRGV** is incorrect that "no federal law provides an applicable statute of limitations." (Dkt. 11, p. 7-8). Instead, here, 28 U.S.C. § 1658(a) is a federal law, directly applicable to Plaintiff's claims, which provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a) (West 2021).

As the Supreme Court instructed in *Jones*: "We conclude that a cause of 'action aris[es] under an Act of Congress enacted' after December 1, 1990--and therefore is governed by § 1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. That construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests. It spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the 'borrowed' limitations periods for preexisting causes of action, with respect to which the difficult work already has been done." *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83, 124 S. Ct. 1836, 1845 (2004). Since the post-1990 enactments explained above apply to **SMITH**'s claims under 504 of the Rehabilitation Act, Plaintiff **SMITH**'s claims are not time-barred because they are governed by the federal four-year statute of limitations under 28 U.S.C. § 1658(a), which is also consistent with 42 U.S.C. § 1988(a). Plaintiff **SMITH**'s Original Complaint (Dkt. 1) was filed on July 19, 2021, and a four-year statute of limitations period encompasses claims that occurred on or after July 19, 2015.

Defendant **UTRGV**'s Motion to Dismiss Plaintiff **SMITH**'s claims because they are

time-barred should be denied.[2]

**C.     Plaintiff has made a prima facie case supporting her claims.**

Defendant **UTRGV** also seeks to dismiss Plaintiff **SMITH**'s claims for failure to make a prima facie case in support of her discrimination claim.

"The precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997 (2002). At the Rule 12(b)(6) stage, our analysis of the [discrimination] claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that "(1) she is an individual with a disability; (2) who is otherwise qualified; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that she was discriminated against solely by reason of her or his disability." *Houston v. Tex. Dep't of Agric.,* No. 20-20591, 2021 U.S. App. LEXIS 33009, at *17 (5th Cir. 2021) (internal citations omitted).

Defendant **UTRGV** only challenges the third and fourth requirements of this standard in its Motion to Dismiss. (Dkt. 11, p. 10, n. 5). Defendant **UTRGV** contends that Plaintiff does not satisfy the third requirement because Plaintiff **SMITH** failed to allege "that **UTRGV** receives or benefits from federal financial assistance" in her First Amended Complaint. (Dkt. 11, p. 10).

---

[2]If the Court finds that the two-year statute of limitations applies, Plaintiff has asserted facts supporting 504 claims that fall squarely within the two-year period. (Dkt. 11, p. 8; Ex. A to Defendant UTRGV's Motion to Dismiss, Dkt. 11).

However, Plaintiff **SMITH** explicitly did assert that **UTRGV**'s programs and operations are covered by 504 of the Rehabilitation Act, 29 U.S.C. § 794(b)(2)(A). (Dkt. 5, ¶ 22). Further, the Court can take judicial notice of the fact that **UTRGV** receives federal financial assistance because this fact is "generally known" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evidence 201(b).[3]

Plaintiff **SMITH** satisfies the third requirement for establishing a prima facie claim of discrimination under the Rehabilitation Act.

With respect to the fourth requirement - that Plaintiff **SMITH** was discriminated against *solely* by reason of her disability - Plaintiff **SMITH** has pled sufficient facts. (Dkt. 5, ¶¶ 1, 34-56, 57-62). "Courts have recognized the flexibility inherent in the McDonnell Douglas formula and that the precise elements of a prima facie case will vary depending on the circumstances." *Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* No. 01-19-00830-CV, 2021 Tex. App. LEXIS 7048, at *14 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021). The "precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" Deville at *14, *citing Swierkiewicz*, 534 U.S. at 512; *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)). In *E.E.O.C. v. LHC Group, Inc.* the court highlighted that the underlying purpose of anti-discrimination legislation is "namely, to remove 'artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible

---

[3] In its Non-Discrimination policy - mandated to be published by recipients of federal financial assistance - **UTRGV** itself states that is a recipient of federal financial assistance. The policy is available here: https://www.utrgv.edu/equity/_files/documents/utrgv-notice-of-non-discrimination.pdf and is part of a public record for which the court can take judicial notice. Fed. R. Evid. 201; *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("the district court took appropriate judicial notice of publicly-available documents").

classification.'" *E.E.O.C. v. LHC Group, Inc.*, at 695-97.

These standards should be kept in mind when considering **UTRGV**'s12(b)(6) motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Nonconclusory factual allegations must be treated as if they are true, and the court must indulge all reasonable inferences in favor of the nonmovant. *Id.*; *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir. 2014).

Here, Plaintiff **SMITH** has alleged that Defendant **UTRGV** violated 504 of the Rehabilitation Act by reason of her disability. In her First Amended Complaint, **SMITH** states facts in support of her claims that **UTRGV:** 1) hired her for the new position in the School of Medicine after nearly 10 years of employment, 2) allowed her to be subjected to harassment and discrimination by reason of her disability, 3) terminated her, 4) excluded her from employment by reason of her of her disability and 5) in retaliation for her complaints, all stemming from her disability. (Dkt. 5, ¶¶ 1, 34-56, 57-62). Plaintiff's termination -because of her disability – is indeed a key role in the exclusion, segregation, classification, and isolation Plaintiff suffered because of **UTRGV**'s violations.

If a plaintiff can satisfy the prima facie elements of discrimination, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for its actions. *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 278 (5th Cir. 2014). **UTRGV** has offered no legitimate non-discriminatory reason for firing Plaintiff **SMITH**, nor for failing to hire her. **UTRGV** alleges that Plaintiff **SMITH** was fired for "performance issues" but offers no supporting facts or documents to corroborate its claim. (Dkt. 11, p. 11). Since Defendant **UTRGV** has not put forth evidence disputing **SMITH**'s allegations; therefore, **SMITH**'s allegations must be taken as true. *Deville*, at *17.

Moreover, Plaintiff has asserted facts in support of her claim that this proffered reason is pretextual. First, **SMITH**'s complaint to **JAMES** about not being hired by **UTRGV** due to her prior termination does not negate a reasonable inference that the sole cause for **SMITH**'s termination, **SMITH**'s classification as a terminated employee, **SMITH**'s blacklisting, as well as all of the other adverse **UTRGV**'s violated the relevant laws, were because of **SMITH**'s disability.

**SMITH**'s mention of facts related to her prior employment, her discharge, her concern about how her termination might affect future employment, or how others are treated differently, do not alter that **SMITH** has pled facts sufficient to support her claim of discrimination because of her disability. Indeed, employees may use an employer's prior bad acts as "background evidence" in support of a claim. *AMTRAK v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L. Ed. 2d 106 (2002). And that a plaintiff was treated less favorably than or replaced by a non-disabled employee—is not universal. *Deville,* at *14, citing *E.E.O.C. v. LHC Group, Inc.*, at 695-697 (stating that requiring employees to prove termination was because of disability and to prove disfavored treatment requires employees to prove causation twice, which is inconsistent with *McDonnell Douglas* and underlying purpose of anti-discrimination legislation—"namely, to remove 'artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification'") (*quoting McDonnell Douglas*, 411 U.S. at 801)). "[T]he other circuits have overwhelmingly required plaintiffs to prove their termination was because of their disability rather than provide evidence of disfavored treatment or replacement." *Deville*, at *16. Overall, Plaintiff **SMITH** has asserted facts that demonstrate that the harassment and discrimination she suffered by Dr. **AZEKE**

gradually led to the poor performance evaluations resulting in **UTRGV** terminating Plaintiff **SMITH**, despite years of service. At minimum, if there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions [to dismiss] should be denied, and the case submitted to the jury." *Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 505-06 (5th Cir. 2002) (citing *Rutherford v. Harris County, Tex.,* 197 F.3d 173, 179 (5th Cir. 1999)(internal quotations omitted)).

The Court should deny Defendant UTRGV's Motion to Dismiss.

## IV. CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated herein, Plaintiff **KEELY SMITH** prays this Honorable Court DENY Defendant UTRGV's Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ William D. Mount, Jr.*
KATIE PEARSON KLEIN
State Bar No. 11561900
Southern District No. 7577
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Southern District No. 14992
LISA Y. GUERRA
State Bar No. 24112407
Southern District No. 2506606
DALE & KLEIN, L.L.P.
1100 E. Jasmine Ave. Ste 202
McAllen, Texas 78501
(956) 687-8700/(956) 687-2416 (fax)
office@daleklein.com

***Attorneys for Plaintiff Keely R. Smith***

## Certificate of Service

    I HEREBY CERTIFY that a true and correct copy of the foregoing document has been forwarded to all counsel of record, to wit:

Melinda J. Wetzel<br>
Assistant Attorney General<br>
Office of the Attorney General<br>
P.O. Box 12548, Capitol Station<br>
Austin, Texas 78711-2548

**VIA** Notice of Electronic Filing on November 23, 2021.

                                              */s/ Lisa Y. Guerra*<br>
                                              LISA Y. GUERRA